**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARINA GROUP LLC,<br><br>     Plaintiff,<br><br>    v.<br><br>SHIRLEY MAY INTERNATIONAL US INC., *et al.*,<br><br>     Defendants. | Case No. 2:21-cv-18733 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court is a Motion to Dismiss filed by Defendants Shirley May International US Inc. ("SMIUS"), Shirley May International FZE ("SMIFZE"), and Swiss Arabian Perfumes Industry L.L.C. ("Swiss Arabian") (collectively, "Defendants"). (ECF No. 51.) Plaintiff Marina Group LLC ("Marina Group") filed an opposition. (ECF No. 52.) Defendants filed a reply. (ECF No. 53.) Having reviewed the submissions filed in connection with the Motion, and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1], for the reasons set forth below, Defendants' Motion to Dismiss Marina Group's First Amended Complaint ("FAC") is **GRANTED** in part and **DENIED** in part.[2]

---

[1] Oral argument was initially scheduled for August 22, 2022. (ECF No. 54.) Argument was postponed and rescheduled several times over the following weeks due to conflicts with both counsel and the Court. (ECF Nos. 56, 63, 65, and 66.) The Court now declines to hold oral argument on the Motion.

[2] The Court is filing a companion opinion in the matter entitled *Shirley May International US Inc., et al. v. Marina Group LLL, et al.*, Civ. A. No. 21-19951.

1

**I.     BACKGROUND**

For the purpose of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Marina Group. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Swiss Arabian is a manufacturer of perfumes in the United Arab Emirates. (ECF No. 36 at ¶ 9.) SMIFZE is Swiss Arabian's shipping arm, and Marina Group was its exclusive distributor in the United States. (*Id.* at ¶¶ 10-11.) The distributorship agreement between Swiss Arabian and Marina Group was never reduced to a single written agreement, but Swiss Arabian acknowledged Marina Group as its exclusive United States distributor. (*Id.* at ¶ 12.)

Marina Group sold Swiss Arabian products through a website, shop.sa-usa.com, and Amazon. (*Id.* at ¶ 14.) In 2020, Marina Group imported approximately $1,000,000.00 of Swiss Arabian product, and in 2021, Marina Group spent over $600,000.00 on advertising the brand. (*Id.* at ¶ 15.) During the last year of the parties' relationship, at Swiss Arabian's request, Marina Group increased its marketing expenditures for the product. (*Id.* at ¶ 19.) Marina Group expended considerable time, effort, and money to promote and build the Swiss Arabian brand based on its understanding that Marina Group would be Swiss Arabian's exclusive representative and distributor in the United States. (*Id.* at ¶¶ 20–21.) During the term of the distributorship agreement, the sale and distribution of Swiss Arabian products represented close to 100% of Marina Group's total revenue. (*Id.* at ¶ 23.)

SMIUS was incorporated on January 4, 2021. (*Id.* at ¶ 24.) In April 2021, Marina Group placed an order (the "Order") with Swiss Arabian for perfumes and related products for a total value of $101,688.89, to be shipped by SMIFZE to Marina Group. (*Id.* at ¶ 28.) Marina Group paid $60,000 in advance with a remainder of $41,688.89 to be paid upon arrival. (*Id.* at ¶ 32.) However, on July 4, 2021, Ashraf Markar, Swiss Arabian's Export Director, requested that Marina Group pay the remaining balance of $41,688.89, and Marina Group complied. (*Id.* at ¶¶ 33-34.) The Order was to be shipped according to a Bill of Lading ("BoL"), with SMIFZE designated as the "shipper," Hapag-Lloyd designated as the "carrier," and Marina Group designated as the consignee. (*Id.* at ¶ 30, Ex. A.) Under the BoL, the goods were to be delivered to the Port of Los Angeles on or about July 16, 2021, at which time the shipment would clear customs and be delivered to Marina Group. (*Id.* at ¶ 35.) Marina Group would then accept the BoL, and all of its terms and conditions, in exchange for the goods delivered. (*Id.* at Ex. A.)

Despite Marina Group's payment in full for the products, the delivery did not occur. (*Id.* at ¶ 36.) Instead, the Order was shipped to China on June 6, 2021, unloaded and shipped to Hong Kong on August 6, 2001, and then unloaded and shipped to New York thereafter. (*Id.* at ¶ 37.) The Order was due in the Port of New York on October 2, 2021. (*Id.* at ¶ 38.) While the Order was in transit, the consignee of the shipment was changed from Marina Group to SMIUS. (*Id.* at ¶ 39.) Marina Group never received the goods. (*Id.*)

Marina Group usually earns about 40% of its sales during the holiday season, which begins in October. (*Id.* at ¶ 40.) Because of the delay, and due to production and shipping lead times, Marina Group could not obtain replacement Swiss Arabian products in time for the holiday season. (*Id.* at ¶ 41.) Holiday shoppers, including Marina Group's usual customers, would have no choice but to obtain Swiss Arabian products from SMIUS. (*Id.* at ¶ 43.) Marina Group alleges Defendants

3

diverted the Order intentionally to steal Marina Group's distributorship and customer base, and to inflict harm upon Marina Group. (*Id.* at ¶¶ 42-43.) Marina Group further alleges Defendants provided Swiss Arabian products to other entities in the United States for distribution, even while the exclusive distributorship was in effect. (*Id.* at ¶ 44.) On August 16, 2021, Swiss Arabian unilaterally terminated the distributorship agreement, effective immediately. (*Id.* at 46.)

This action was removed from the Superior Court of New Jersey, Chancery Division, Middlesex County on October 15, 2021. (ECF No. 1.) Marina Group filed a Motion for Remand on October 19, 2021 (ECF No. 4) and for Preliminary Injunction on October 29, 2021 (ECF No. 8). Defendants filed a Cross-Motion for Sanctions on November 1, 2021. (ECF No. 9.) The motions were thereafter withdrawn. (ECF Nos. 26, 31.)

On March 21, 2022, Marina Group filed the FAC. (ECF No. 36). Marina Group asserted causes of action for: (1) Conversion; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Tortious Interference with Contract; (5) Tortious Interference with Prospective Economic Advantage; and (6) Copyright Violation. (*Id.*) Annexed to Marina Group's FAC as Exhibit B is a copy of the BoL. (ECF No. 36, Ex. B.) Specifically, the BoL provides the following:

> RECEIVED by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Containers or other packages or units indicated in the box opposite entitled "Total No. of Containers/ Packages received by the Carrier" for Carriage subject to all the terms and conditions hereof (INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE HEREOF AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF) from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. One original Bill of Lading, duly endorsed, must be surrendered by the Merchants to the Carrier in exchange for the Goods of a delivery order. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its terms and conditions whether printed,

>   stamped or written, or otherwise incorporated, notwithstanding the non-signing of this Bill of Lading by the Merchant.

(*Id*.) The Terms and Conditions[3] include the following clause (the "Clause") material to this Motion:

>   **25. Law and Jurisdiction**
>   Except as otherwise provided specifically herein any claim, dispute, suit or proceeding arising under this Bill of Lading and/or the contract between Carrier and the booking party shall be governed by German law and shall be determined exclusively in the Hamburg courts. Carrier shall have the option to file a suit at Merchant's place of business.

(ECF No. 51-3, Ex. A.)

Defendants filed a Motion to Dismiss pursuant to the Forum Selection Clause and for failure to state a claim on April 21, 2022. (ECF. No. 41.) The Motion was terminated without prejudice pending a June 1, 2022 settlement conference. (ECF No. 49.) Defendants' Motion to Dismiss, Marina Group's Opposition, and Defendants' Reply were refiled on June 1, 2022. (ECF Nos. 51, 52, 53.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

---

[3] The BoL's Terms of Conditions were annexed to Defendants' Motion to Dismiss as Exhibit A. (ECF No. 51-3.)

elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, Civ. A. No. 21-1458, 2022 WL 965058 at *5 (3d Cir. Mar. 23, 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion

to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 2022 WL 965058, at *3.

### III.   DECISION

Defendants argue Marina Group's FAC must be dismissed pursuant to the Forum Selection Clause of the BoL. (ECF No. 51-1 at 7-10.) Further, Defendants claim the FAC must be dismissed because it fails to state a claim upon which relief can be granted. (*Id.* at 3-6.) Marina Group counters that the Forum Selection Clause should not be considered by the Court; does not apply to the lawsuit; and has been waived. (ECF No. 53 at 2-13.) Additionally, Marina Group contends the causes of action alleged in the FAC were adequately pled. (*Id.* at 13-25.) The arguments are addressed in turn below.

### A. Forum Selection Clause

Defendants claim each of Marina Group's six causes of action stem from Defendants' allegedly wrongful diversion of a shipment of Swiss Arabian products, which were to be delivered to Marina Group pursuant to a BoL between SMIFZE and Hapag-Lloyd. (ECF No. 51-1 at 7.) Defendants argue the terms of the BoL, specifically, the Forum Selection Clause, apply to Marina Group's claims, as a third-party beneficiary suing pursuant to the BoL, which necessitates dismissal of the action before the Court. (*Id.* at 7-8.) Marina Group contends the Forum Selection Clause has not been properly placed before the Court because the document is not undisputedly authentic; the Clause does not apply to the lawsuit because Marina Group is suing pursuant to the parties' distributorship agreement and not the BoL; and the defense of the Forum Selection Clause has been waived. (ECF No. 52 at 2-13.) The Court agrees with Marina Group.

The Court can consider whether the Forum Selection Clause of the BoL is applicable to this matter, and considers the parties' arguments accordingly.[4] Defendants argue each of Marina Group's six causes of action, both contractual and non-contractual, arise out of and implicate the BoL. (ECF No. 51-1 at 9.) Therefore, Defendants contend the Forum Selection Clause applies, and

---

[4] Marina Group attached the BoL as an exhibit to the FAC. (See ECF No. 36, Ex. B.) In support of their Motion, Defendants provided the Terms and Conditions, which contain the Forum Selection Clause, and are incorporated into the BoL by reference. (See ECF No. 51-2, Ex. A.) Marina Group argues the Terms and Conditions are not properly before the Court because they are neither concededly nor undisputedly authentic. (*See* ECF No. 52 at 3-4.) The Court disagrees. Because Marina Group attached the BoL to the FAC, Marina Group was on notice of the contents of the document, including that the Terms and Conditions were referenced therein. *See Pension Ben. Guaranty Corp. v. White Con. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding, in deciding a motion to dismiss, courts may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" and further, "[w]hen a [C]omplaint relies on a document . . . the plaintiff obviously is on notice of the contents of the document."). Therefore, the Court may consider the Forum Selection Clause's applicability to this action. *See Brusco v. Harleysville Ins. Co.*, Civ. A. No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 16, 2014) (finding there was no reasonable dispute about the authenticity of a letter, where it referenced the same insurance policy and address of the property at issue in the Complaint).

this litigation should be litigated in the Hamburg Courts. (*Id.* at 8.) Marina Group disagrees and argues the Clause only applies to the BoL between the shipper, SMIFZE, and the carrier, Hapag-Lloyd, to which Marina Group was not a party, and does not apply to the distributorship agreement between Marina Group and Swiss Arabian. (ECF No. 52 at 5-8.) Defendants maintain that Marina Group brought its claims under the BoL rather than the distributorship agreement and that Marina Group, as a third-party beneficiary of the BoL, should be subject to its terms, including the Forum Selection Clause. (ECF No. 53 at 2-5.) The Court agrees with Marina Group.

While federal law controls the question of whether to enforce a forum selection clause, state law determines the scope of the clause, including the question of "whether the clause applies to a non-signatory as an intended beneficiary or closely related party." *In re McGraw-Hill*, 909 F.3d at 58; *see also Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 130 (D.N.J. 2020) (second alteration in original) ("[S]tate law covers the very issue presented here: 'whether the [forum selection] clause applies to a non-signatory as an intended beneficiary or closely related party.'"). Therefore, federal law governs all procedural issues involving the enforceability of the Clause, while New Jersey law applies to all questions of substantive law. *See Zydus*, 461 F. Supp. 3d at 129-30 ("State, not federal law governs the scope of a forum selection clause. That is so because the intended scope of a clause is not a procedural issue, but a substantive question 'of contract interpretation.'").

Under New Jersey law, a non-signatory may file suit under the terms of a contract where the contracting parties intended that the third-party benefit from the existence of the agreement. *Ross v. Lowitz*, 120 A.3d 178, 189-90 (2015). The Court's inquiry "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." *Id.* Significantly, in cases

9

where New Jersey courts have examined the enforceability of a contract on a third-party beneficiary, that third-party has actively sought to benefit from the contract's terms. *See Broadway Maintenance Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 915 (1989) ("[A] third party beneficiary may sue on a contract when it is an intended and not an incidental beneficiary."); *Rieder Comm., Inc. v. Township of North Brunswick*, 546 A.2d 563, 556 (App. Div. 1988) ("[T]hird-party beneficiaries may sue upon a contract made for their benefit without privity of contract."); *Lawrence R. McCoy Co., Inc. v. S. S. Theomitor III*, 336 A.2d 80, 86-87 (N.J. Sup. Ct. Ch. Div. 1975) (finding, where a third-party beneficiary sought application of the terms of the bills of lading entered into by plaintiffs and defendant ocean carriers, that the bills' statute of limitations provision applied).

This case is distinguishable from the New Jersey case law published on this issue, as well as the federal cases cited by Defendants[5] because Marina Group—whether an intended beneficiary of the BoL between SMIFZE and Hapag-Lloyd or not—is not availing to or seeking to benefit from that contract's terms. Instead, Marina Group is alleging causes of action stemming from and relating to its distributorship agreement with Swiss Arabian.

Marina Group entered into a distributorship agreement with Swiss Arabian in 2017, wherein Marina Group was to serve as Swiss Arabian's exclusive distributor in the United States. (ECF No. 36 at ¶¶ 11, 12.) This agreement, or any contract of sale between the parties, is separate and apart from the BoL between SMIFZE and shipping company Hapag-Lloyd, to which Marina Group was only a consignee of the goods already owed to them pursuant to the distributorship

---

[5] *See, e.g., A.P. Moller-Maersk A/S v. Comercializadora de Calidad S.A.*, 429 F. App'x 25 (2d Cir. 2011); *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275 (6th Cir. 2021); *Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY*, 408 F.3d 1250 (9th Cir. 2005); *Ana Distrib., Inc. v. CMA-CGM (Am.) Inc.*, 329 F. Supp. 2d 565 (S.D.N.Y. 2004).

agreement. (*See* ECF No. 36, Ex. B.) Marina Group's entitlement to a shipment of goods, paid for in full but allegedly diverted in transit, does not arise from its status as a consignee or third-party beneficiary to the shipping agreement, but from the distributorship agreement—its contract for those goods with Defendants. Marina Group's reference to the BoL or to the alleged issues with the shipment does not change that Marina Group had rights to the shipment by way of the distributorship agreement and Defendants had an obligation to provide the shipment pursuant to that agreement. Because Marina Group was not a signatory of the BoL and did not sue pursuant to the BoL, but instead, pursuant to its distributorship agreement with Defendants, the Forum Selection Clause in the BoL between SMIFZE and Hapag-Lloyd does not apply to mandate a transfer of this matter to the Hamburg Courts. Therefore, the Court retains jurisdiction over this litigation.[6]

### B. Sufficiency of Marina Group's FAC

Defendants allege Marina Group's FAC is deficient as to its causes of action for Copy Right Infringement (Count VI); Tortious Interference with Contract (Count IV); Tortious Interference with Prospective Economic Advantage (Count V); Breach of Contract (Count II); and Breach of Implied Covenant (Count III). (ECF No. 51-1 at 3–7.) Marina Group disagrees and argues in the alternative that any deficiencies should be cured in a Second Amended Complaint.[7] (ECF No. 52 at 13–24.) The Court agrees with Defendants and grants their Motion to Dismiss, without prejudice and with leave to amend, Counts II, III and VI of Marina Group's FAC, but denies their Motion as to the remaining Counts.

---

[6] Because the Forum Selection Clause does not apply to this lawsuit, the Court need not address whether Defendants waived the defense, as the issue is now moot.

[7] Marina Group's opposition asserts it adequately pleaded Counts II through V and does not address its Count VI Copyright Infringement claim.

1. Copyright Infringement Claim (Count VI)

Defendants allege Marina Group's Copyright Infringement Claim must be dismissed because Marina Group did not plead that it has registered any work related to Defendants' products and cannot plead it owns the registration. (ECF No. 51-1 at 3–4.) Notably, Marina Group did not oppose Defendants' arguments as to dismissal of this Count. (*See* ECF No. 52.)

To establish a claim for copyright infringement, Marina Group must prove: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Live Face on Web, LLC v. Emerson Cleaners, Inc.,* 66 F. Supp. 3d 551, 554 (D.N.J. 2014) (quoting *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 240, 261 (1991)). It is crucial to demonstrate the copyright upon which the infringement action rests is valid. *Silvertop Assocs., Inc. v. Kangaroo Manufacturing, Inc.,* 319 F. Supp. 3d 754, 762 (D.N.J. 2018) (quoting *Don Post Studios, Inc. v. Cinema Secrets, Inc.*, 124 F. Supp. 2d 311, 315 (E.D. Pa. 2000)).

Marina Group has failed to state a claim for copyright infringement. Marina Group's FAC vaguely alleges Defendants "expropriated content that Marina Group created with the expenditure of significant time and expense" and "copied and reproduced . . . copyrighted material without Marina Group's authorization." (ECF No. 36 at ¶¶ 83, 85.) However, Marina Group failed to identify what copyrighted material Defendants allegedly copied, reproduced or expropriated, and whether that material is subject to a valid copyright. (*Id.* at ¶¶ 81-86.) Accordingly, it is impossible for the Court to determine whether Defendants infringed upon a valid copyright. *See Dellmorte, LLC v. Michaels Companies, Inc.*, Civ. A. No. 21-cv-2029, 2022 WL 254427, at *2 (D.N.J. Jan. 27, 2022) (quoting *Cianelli v. Nourison Indus., Inc., et al.*, Civ. A. No. 19-cv-19147, 2020 WL 4882500, at *5 (D.N.J. Aug. 20, 2020) (alterations in original) ("A court will dismiss a copyright infringement claim if it concludes that 'no trier of fact could rationally determine the two [works]

to be [substantially] similar.'"). Marina Group's cause of action for copyright infringement is insufficient, and must be dismissed. *See Iqbal*, 556 U.S. at 678 (explaining a Complaint must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation."). However, the dismissal of Count VI of Marina Group's FAC is without prejudice, with leave to amend. *See Phillips*, 515 F.3d at 245 ("[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

### 2. Tortious Interference Claims (Counts IV and V)

Defendants argue Marina Group failed to plead its claims for tortious interference with contract and tortious interference with prospective economic advantage because Marina Group failed to allege SMIUS[8] interfered with any contract or relationship between Marina Group and a third party, since SMIUS is an affiliate of Swiss Arabian, and not a third-party to the contract or relationship. (ECF No. 51-1 at 4-6.) Marina Group counters that SMIUS is a third-party, despite its affiliation and common directorship with the other Defendants. (ECF No. 52 at 19-24.) Further, as to Marina Group's tortious interference with prospective economic advantage claim, Marina Group argues the economic relations with which SMIUS allegedly interfered are the relationships between Marina Group and its customers, which in no way implicates the affiliations of Defendants. (*Id.* at 24.) The Court agrees with Marina Group.

The elements for tortious interference with a contract include: "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co., Inc.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (1989)). The contractual relationship must

---

[8] Counts IV and V are directed at SMIUS only.

exist between the plaintiff and a third party. *Ciecka v. Rosen*, 908 F. Supp. 2d 545, 556 (D.N.J. 2012); *see also Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006). Indeed, it is "fundamental" to the cause of action "that the claim be directed against defendants who are not parties to the relationship." *Printing Mart*, 563 A.2d at 38.

It is true "a party to the contract, may not tortiously interfere with the contract." *Motise v. Parrish*, 297 F. App'x 149, 152 (3d Cir. 2008). Defendants argue SMIUS is an "affiliate" of Swiss Arabian (ECF No. 51-1 at 5-6), and that it shares "common owners, founders, and [is] further affiliated as the Swiss Arabian Perfumes Group" (ECF No. 53 at 7) (citing ECF No. 36 at ¶¶ 3-8). Therefore, Defendants contend there is no "third party" involved in the allegedly tortious actions and Marina Group's FAC, as to Count IV, should be dismissed. (ECF No. 51-1 at 6.) However, at this stage, it is unclear how closely the Defendant entities are related to or affiliated with one another to determine, as a matter of law, whether SMIUS could interfere in a contract between Marina Group and Swiss Arabian. *See Horowitz v. Nat. Gas & Elec., LLC*, Civ. A. No. 17-7742, 2018 WL 4572244, *5 (S.D.N.Y. Sept. 24, 2018) ("The mere fact that [one defendant] is 'affiliated' with [another] does not establish that [the first is] a party to the contract . . . for the purposes of [a] tortious interference claim."). Marina Group's cause of action for tortious interference with contract sets forth a plausible claim for relief, and therefore, Defendants' Motion to Dismiss, as to Count IV, is denied. *See Iqbal*, 556 U.S. at 679.

The cause of action for intentional interference with a prospective economic advantage, set forth in Count V of Marina Group's FAC, "has long been recognized as distinct from the tort of interference with the performance of a contract." *Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co.*, 912 F. Supp. 747, 772 (D.N.J. 1995) (quoting *Printing Mart*, 563 A.2d at 36). The elements for tortious interference with prospective economic advantage are the same as those for

tortious interference with contract, "[a]lthough the right need not equate with that found in an enforceable contract," instead, "there must be allegations of fact giving rise to some reasonable expectation of economic advantage." *Rutledge v. Int'l Longshoremen's Assoc. AFL-CIO*, 701 F. App'x 156, 163–64 (3d Cir. 2017) (alteration in original) (quoting *MacDougall v. Weichert*, 677 A.2d 162, 174 (1996)); *see also Printing Mart*, 563 A.2d at 37 (explaining the difference between tortious interference with a prospective economic advantage and with a contract "is simply the existence of a contract, as opposed to [a] plaintiff's reasonable expectation of an agreement").

The Court similarly denies Defendants' Motion to Dismiss as to Count V. Marina Group pleaded sufficient facts to support its claim that SMIUS tortiously interfered with Marina Group's prospective economic opportunities with its customers, and therefore, dismissal at this stage is improper. *See Twombly*, 550 U.S. at 555.

### 3. Breach of Contract and Implied Covenant Claims (Counts II and III)

Defendants claim Marina Group's FAC fails to state a claim for breach of contract or breach of implied covenant of good faith and fair dealing because it is pleaded against Defendants as a group. (ECF No. 51-1 at 6-7.) Marina Group argues in response that their allegations are not a "group pleading," as Defendants have been put on notice of the claims against them and adequately identified each of Defendants' roles. (ECF No. 52 at 14–19.)

To properly plead a breach of contract claim, a "plaintiff must allege: (1) a contract existed; (2) breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also, Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted). It is well-established that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants" so as to

place the defendants on notice of the claims asserted against them. *Integrated Micro-Chip Elec. Mexico v. Lantek Corp.*, Civ. A. No. 18-14112, 2019 WL 4668036, at *2 (D.N.J. Sept. 24, 2019) (quoting *Shaw v. Housing Auth. of Camden*, Civ. A. No. 11-4291, 2012 WL 3283402, at *3 (D.N.J. Aug. 10, 2012) (dismissing a plaintiff's complaint without prejudice as a "group pleading" where the plaintiff treated defendant, Atlantis-Canada and Atlantis-US as a single, unitary entity, and failed to identify precisely what acts each individual undertook to breach the contract).

While Marina Group is correct to argue this case is "not a case in which numerous, wide-ranging allegations were lodged against distinct entities" (ECF No. 52 at 16), it is also not a case involving a "two-count complaint against two defendants alleging one general theory of liability." *See Hotaling & Co., LLC v. Berry Solutions Inc.*, Civ. A. No. 20-18718, 2021 WL 4860096, at *7 (D.N.J. Oct. 19, 2021). The FAC alleges six causes of action, some of which are alleged against one defendant, and some against all three. (*See* ECF No. 36.) However, throughout most of the facts alleged, the three defendants are referenced collectively as Swiss Arabian Perfume Group, without differentiation among their actions. (*See id.* at ¶ 8.) This group pleading in the FAC is problematic, not only because it is unclear which factual allegations are relevant to which defendants, but also because some of the allegations, as written, result in a conflict of claims necessitating resolution. (*Compare id.* at ¶ 53, alleging Marina Group and Swiss Arabian Perfumes Group, collectively and including SMIUS, entered into an exclusive distributorship agreement, *with id.* at ¶ 65, 70, alleging SMIUS tortiously interfered with the distributor agreement).

Accordingly, Counts II and III[9] of Marina Group's FAC are dismissed, without prejudice and with leave to amend the FAC in accordance with these findings. *See Integrated Micro-Chip Elec.*, 2019 WL 4668036 at *3.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as to Counts II, III and VI, without prejudice and with leave to amend, but **DENIED** as to the remaining counts of Marina Group's FAC.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 13, 2022

---

[9] Because we dismiss Marina Group's Breach of Contract cause of action for failure to state a claim, we must also dismiss their Breach of Implied Covenant cause of action, also without prejudice, to be amended in accordance with the opinion set forth herein. *See Longo v. Purdue Pharma, L.P.*, Civ A. No. 14-1204, 2014 WL 2800817, at *6 (D.N.J. June 19, 2014); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (2002).