**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

MARINA GROUP LLC,

        Plaintiff,

v.

SHIRLEY MAY INTERNATIONAL US INC., *et al.*,

        Defendants.

Case No. 2:21-cv-18733 (BRM) (MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Shirley May International US, Inc. ("Shirley May US"), Shirley May International FZE ("Shirley May International"), and Swiss Arabian Perfumes Industry, LLC's ("Swiss Arabian") (collectively, "Defendants") Motion to Dismiss (ECF No. 100) Counts II and III of Plaintiff Marina Group, LLC's ("Plaintiff") Second Amended Complaint ("Complaint") (ECF No. 92) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an Opposition on January 22, 2024. (ECF No. 101.) Defendants filed a reply on January 29, 2024. (ECF No. 102.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED** and Counts II and III of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

#### A. Factual Background

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter arises from a diverted shipment of perfumes and other related products. (ECF No. 92 ¶ 29.) The relationship between Plaintiff and Defendants began in 2017, when Swiss Arabian appointed Plaintiff as its exclusive distributor in the United States. (*Id.* ¶ 11.) The distribution agreement was not reduced to a single writing (*id.* ¶ 12), however, Swiss Arabian acknowledged Plaintiff as its "representative office in United Stated [*sic*] of America" in a letter to a potential product purchaser on February 21, 2021 (*id.* ¶ 13; Ex. A).

Plaintiff purchased products from Swiss Arabian and Shirley May International to sell via (i) a website named shop.sa-usa.com and (ii) Amazon. (*Id.* ¶¶ 14–15.) Plaintiff's purchases of Swiss Arabian products grew from $60,000 in 2017 to approximately $1,000,000 in 2020. (*Id.* ¶ 16.) Plaintiff correspondingly spent over $361,892 on advertising the Swiss Arabian brand between January 1, 2021 and September 30, 2021 and $275,155 on marketing in the three months before the 2021 holiday season. (*Id.* ¶ 18.) Plaintiff also purchased sample vials from Swiss Arabian and Shirley May International to further market Swiss Arabian products. (*Id.* ¶ 19.) During the term of Plaintiff's distributorship agreement with Swiss Arabian, Swiss Arabian products represented close to 100% of Plaintiff's total revenue. (*Id.* ¶ 24.)

2

Shirley May US was incorporated in New Jersey on January 4, 2021. (*Id.* ¶ 25.) In April 2021, Plaintiff placed an order with Swiss Arabian for a variety of Swiss Arabian perfumes and related products valued at $94,988.89, together with freight charges of $6,700.00, for a total value of $101,688.89. (*Id.* ¶ 29.) On May 7, 2021, Plaintiff's order "was placed aboard the HMM Southampton, Voyage No. 003E, at Jebel Ali, United Arab Emirates, bound for the Port of Los Angeles, California." (*Id.* ¶ 30.) The Order was to be shipped according to a Bill of Lading with Shirley May International designated as the "shipper," Hapag-Lloyd designated as the "carrier," and Plaintiff designated as the consignee. (*Id.* ¶ 31; Ex. B.) At Shirley May International's request, Plaintiff paid $60,000 in advance for the shipment, with the remaining payment of $41,688.89 to be paid prior to the goods being released to Plaintiff. (*Id.* ¶ 33.) Swiss Arabian demanded the $41,688.89 payment via email on July 4, 2021 and attached "documents pertaining to the shipment expected to reach POD at around July 16, 2021." (*Id.* ¶ 34; Ex. D.) Swiss Arabian acknowledged Plaintiff's payment of the $41,688.89 on July 13, 2021. (*Id.* ¶ 35; Ex. E.) The goods were to be delivered at the Port of Los Angeles on July 16, 2021, at which point the shipment would clear customs and be delivered to Plaintiff. (*Id.* ¶ 36.)

The shipment was transferred from the HMM Southampton to Zeng Dong 813 at the port of Nansha, Guangzhou, China on June 6, 2021. (*Id.* ¶ 38.) The Zeng Dong 813 then arrived in Hong Kong, at which point the shipment was placed on the Madrid Bridge bound for the port of New York on October 2, 2021. (*Id.* ¶¶ 38–39; Exs. F, G.) The consignee of the shipment changed from Plaintiff to Shirley May US while the shipment was in transit. (*Id.* ¶ 40; Ex. G.)

Plaintiff was not able to obtain "replacement Arabian themed branded products from other suppliers in time for the holiday season." (*Id.* ¶ 42.) Plaintiff usually earns about 40% of its sales during the holiday season, which begins in October. (*Id.* ¶ 41.)

3

On August 16, 2021, Swiss Arabian terminated its distributorship agreement with Plaintiff, effective immediately. (*Id.* ¶ 47.)

Swiss Arabian also provided goods to "Intense Oud, located at 5875 N. Lincoln Ave., Suite 132, Chicago, Illinois, 60659." (*Id.* ¶ 46.)

### B. Procedural History

This action was removed from the Superior Court of New Jersey, Chancery Division, Middlesex County on October 15, 2021. (ECF No. 1.) Plaintiff filed a Motion for Remand on October 19, 2021 (ECF No. 4) and a Motion for a Preliminary Injunction on October 29, 2021 (ECF No. 8). Defendants filed a Cross-Motion for Sanctions on November 1, 2021. (ECF No. 9.) The motions were thereafter withdrawn. (ECF Nos. 26, 31.) On March 21, 2022, Plaintiff filed its First Amended Complaint. (ECF No. 36.) Defendants filed a Motion to Dismiss for failure to state a claim and based on the forum selection clause contained in the subject Bill of Lading. (ECF No. 51.)

On December 13, 2022, this Court granted Defendants' Motion to Dismiss as to Plaintiff's breach of contract, breach of implied covenant, and copyright violation claims, without prejudice and with leave to amend, but denied the motion as to the remaining counts. (ECF No. 70.) Defendants filed a motion for reconsideration on January 23, 2023, asking the Court to reconsider its denial of their Motion to Dismiss Plaintiff's First Amended Complaint, specifically Plaintiff's conversion claim, pursuant to the forum selection clause. (ECF No. 74.) On August 7, 2023, the Court denied Defendants' Motion for Reconsideration. (ECF Nos. 83, 84.) Plaintiff filed its Second Amended Complaint on November 21, 2023 stating claims for: (I) Conversion against Shirley May US; (II) Breach of Contract against Swiss Arabian; (III) Breach of the Implied Covenant of Good Faith and Fair Dealing against Swiss Arabian; (IV) Tortious Interference with Contract against

Shirley May International and Swiss Arabian; and (V) Tortious Interference with Prospective Economic Advantage against Shirley May US. (ECF No. 92.) Defendants filed a Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 100.) Plaintiff filed an Opposition on January 22, 2024. (ECF No. 101.) Defendants filed a reply on January 29, 2024. (ECF No. 102.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted

5

unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184

F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III. DECISION

#### A. Law of the Case

Plaintiff argues Defendants' motion to dismiss should be denied based on the law of the case doctrine, which prevents a party from relitigating an issue already decided by the Court. (ECF No. 101 at 3–5.) Plaintiff claims the Court previously dismissed the Breach of Contract and Implied Covenant of Good Faith and Fair Dealing counts in its First Amended Complaint solely because the claims were pled against Defendants as a group. (*Id.*) Plaintiff argues it has rectified the group pleading issue identified in the Court's prior Opinion by clearly stating Counts II and III of its Complaint are asserted only against Swiss Arabian. (*Id.* at 3.) Because the Court did not otherwise address the sufficiency of these claims, including whether Plaintiff adequately pled the existence of a contract, Plaintiff asserts the law of the case doctrine should govern to prevent Defendants from relitigating a claim they already attempted to assert in their prior motion to dismiss. (*Id.* at 4–5.)

Defendants reply that the law of the case doctrine does not apply, as the Court's previous Opinion does not address whether Plaintiff adequately pled the elements of Counts II and III, meaning the issue was not previously litigated. (ECF No. 102 at 7.) Defendants cite to caselaw to assert that the law of the case doctrine does not apply unless a court explicitly addressed the issue in a prior decision. (*Id.* at 7–8.) Defendants claim it is irrelevant that Plaintiff potentially corrected

the group pleading issue identified in the Court's prior Opinion, as there is no precedent indicating the amended complaint cannot then be attacked on other grounds. (*Id.* at 8–9.) Defendants argue applying the law of the case doctrine to this case would be inconsistent with its purpose, as the doctrine is meant to prevent reconsideration of adjudicated issues, and the Court has not previously considered Defendants' arguments in this motion. (*Id.* at 8.)

The law of the case doctrine does not apply to this motion, as the Court did not address whether Plaintiff had adequately pled the elements of Counts II and III in its Opinion on the prior motion to dismiss the First Amended Complaint. It is well-established that a court must have directly addressed the contested issue in a prior opinion for the law of the case doctrine to apply. *See Romero v. Allstate Ins. Co.*, 170 F. Supp. 3d 779, 791–92 (E.D. Pa. 2016) (holding law of the case doctrine did not preclude court's consideration of the sufficiency of breach of contract claims as the prior circuit decision explicitly deferred ruling on the merits of the substantive claims); *Waste Conversion, Inc. v. Sims*, 868 F. Supp. 643, 649 (D.N.J. 1994) ("Because we address an issue different from the one previously addressed . . . the law of the case doctrine does not apply."); *United States ex rel. Silver v. Omnicare, Inc.*, Civ. A. No. 11-1326, 2020 WL 7022664, at *4 (D.N.J. Nov. 30, 2020) ("The law of the case doctrine does not apply here because the Court's Opinion denying the initial motion to dismiss contained no rule of law that dictated the resolution of PharMerica's Motion for Judgment. Simply, this Court 'did not previously address the subject issue' of PharMerica's current Motion." (quoting *Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, Civ. A. No. 18-00345, 2019 WL 3778756, at *6 (W.D. Pa. Aug. 12, 2019))); *In re Joy Glob., Inc.*, 381 B.R. 603, 611 (D. Del. 2007) ("An additional reason that the law of the case doctrine does not apply here is because the Court of Appeals did not reach the Wisconsin law issues now before this Court."). Here, the Court did not address the adequacy of Plaintiff's pleading

of the elements of Counts II and III in its prior Opinion, instead dismissing the Breach of Contract and Implied Covenant claims for impermissible group pleading against multiple defendants. (ECF No. 69 at 15–17.) Therefore, the law of the case doctrine does not preclude a separate attack on the sufficiency of Plaintiff's pleading of Counts II and III. *See Romero*, 170 F. Supp. 3d at 791–92; *Waste Conversion*, 868 F. Supp. 643 at 649 (quoting *Prime Energy*, 2019 WL 3778756, at *6); *Omnicare, Inc.*, 2020 WL 7022664, at *4; *In re Joy Glob., Inc.*, 381 B.R. at 611.

Accordingly, the Court holds the law of the case doctrine does not bar Defendants' present motion to dismiss Counts II and III of Plaintiff's Complaint. The Court will therefore consider the sufficiency of Plaintiff's pleading of Counts II and III.

### B. Sufficiency of Pleading

#### 1. Count II (Breach of Contract)

Defendants argue Plaintiff has not pled any of the elements of a contract between Plaintiff and Swiss Arabian, as the Complaint does not allege (i) the existence of a contract, (ii) that Plaintiff performed its own duties under the contract, and (iii) any contractual breach. (ECF No. 100-1 at 4–5.) Defendants argue the Complaint does not show any "meeting of the minds" or common understanding of the terms of the contract, as it is not clear when the agreement manifested, what consideration was given, and what obligations Swiss Arabian undertook to Plaintiff. (*Id.* at 4.) Defendants also assert Plaintiff fails to plead that it performed its obligations under the contract, as Plaintiff does not allege any terms of the contract which imposed any obligations on it. (*Id.* at 4–5.) Finally, Defendants claim Plaintiff has not alleged any breach of an exclusive distributorship contract, as Plaintiff alleges only that a shipment was diverted, and does not allege Swiss Arabian allowed another company to distribute its goods. (*Id.* at 5.)

Plaintiff argues it has alleged the elements of a breach of contract claim, as it has shown Swiss Arabian offered Plaintiff an exclusive distributorship agreement, which Plaintiff accepted and relied upon in making various investments in the marketing of the brand. (ECF No. 101 at 7–8.) Plaintiff claims Swiss Arabian breached the contract by selling its products to other companies and terminating the agreement without warning, causing damages to Plaintiff. (*Id.* at 8.) Plaintiff asserts the contract was in effect from 2017 to August 16, 2021. (*Id.*) Although there was no specified duration for the contract, Plaintiff claims an implied exclusive distributorship agreement is terminable only "after a reasonable period, upon reasonable notice." (*Id.* at 10.) (quoting *Sierra Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d 129 (9th Cir. 1980)). To the extent there are any missing terms in the contract, Plaintiff argues the Court may use standard terms from the Uniform Commercial Code ("UCC") in place of the missing terms. (*Id.* at 12–14.) Plaintiff alleges the Complaint contains a letter from Swiss Arabian acknowledging its exclusive distributorship agreement with Plaintiff. (*Id.* at 14–15.) Therefore, Plaintiff claims it has alleged Swiss Arabian breached an implied exclusive distributorship agreement with Plaintiff by supplying other dealers within the exclusive territory. (*Id.* at 15.)

Defendants reply that Plaintiff has still failed to identify any terms of the purported contract, or that a contract even existed. (ECF No. 102 at 2–3.) Defendants argue that Plaintiff's Exhibit A only shows Swiss Arabian acknowledging Plaintiff as a "representative" and does not imply any exclusive distributorship agreement. (*Id.* at 3.) Defendants assert that Plaintiff identifies only one term of the alleged contract by conclusorily stating that the contract made Plaintiff an "exclusive distributor." (*Id.*) Defendants argue the UCC cannot supply all the terms of a contract, rather, the addition of UCC terms must be based on writing or conduct that clearly indicates the existence of a contract. (*Id.* at 4–6.) Defendants claim Plaintiff has failed to allege the existence of

10

a contract because it pleads no meeting of the minds, consideration, mutual assent, or essential terms of the contract. (*Id.* at 6.)

To allege a breach of contract claim, "[a] plaintiff must state facts that allow for the plausible inference that a contract exists and that provisions in that contract were violated." *See Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, Civ. A. No. 23-05142, 2024 WL 1928680, at *2 (D.N.J. Apr. 30, 2024); *Etrailer Corp. v. Unbeatablesale.com, Inc.,* Civ. A. No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (quoting *Riachi v. Prometheus Grp.*, Civ. A. No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016))); *Sequiera v. JP Morgan Chase Bank, N.A.*, Civ. A. No. 16-5278, 2019 WL 1434969, at *3 (D.N.J. Mar. 29, 2019) ("To establish a claim for breach of contract, the plaintiff must demonstrate the existence of a contract by showing offer, acceptance, consideration, and mutual assent.").

To plead the existence of a contract, a plaintiff must allege "(1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms." *Gant v. Ragone*, Civ. A. No. 20-01727, 2020 WL 6797125, at *2 (D.N.J. Nov. 19, 2020); *Sequiera*, 2019 WL 1434969, at *3; *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2013 WL 1223643, at *3 (D.N.J. Mar. 25, 2013) ("No valid contract exists unless a party alleges four elements: 1) a meeting of the minds; 2) an offer and acceptance; 3) consideration; 4) reasonably certain contract terms."). "An enforceable contract may occur where once [*sic*] party communicates an offer and another party demonstrates acceptance." *Gordon v. Dailey*, Civ. A. No. 14-7495, 2018 WL 1509080, at *8 (D.N.J. Mar. 27, 2018). For a contract to be enforceable, "there must be a meeting of the minds for each material term to an agreement." *Read v. Profeta*,

397 F. Supp. 3d 597, 626 (D.N.J. 2019) (quoting *In re Rappaport*, 517 B.R. 518, 529 (Bankr. D.N.J. 2014)); *see also World Express & Connection, Inc. v. Crocus Invs., LLC*, Civ. A. No. 15-8126, 2020 WL 5088633, at *13 (D.N.J. Aug. 28, 2020) (the meeting of the minds requirement 'is met when "there has been a common understanding and mutual assent to all the terms of a contract."' (quoting *In re Rappaport*, 517 B.R. at 530)). As to consideration, "[u]nder New Jersey law, '[c]onsideration may take many forms and may be based upon either "a detriment incurred by the promisee or a benefit received by the promisor."'" *Comprehensive Spine Care v. Oxford Health Ins.*, Civ. A. No. 18-10036, 2019 WL 928421, at *4 (D.N.J. Feb. 26, 2019) (quoting *Seaview Orthopaedics ex rel. Fleming v. Nat'l Healthcare Res., Inc.*, 841 A.2d 917, 921 (N.J. App. Div. 2004). For the requirement of "reasonably certain contract terms," the Court must be able to "determine the contracts [*sic*] 'essential terms' to which the parties manifested an intent to be bound." *Pegaso Dev., Inc. v. iOra Acquisition Enters. LLC*, Civ. A. No. 21-3171, 2021 WL 5035970, at *3 (D.N.J. Oct. 18, 2021) (quoting *Grossman v. Parking Auth. of City of Camden*, Civ. A. No. 12-3097, 2013 WL 1144830, at *3 (D.N.J. Mar. 18, 2013)); *see also Grossman*, 2013 WL 1144830, at *3 ("Finally, the 2014 Agreement, while taking oral form, nevertheless included reasonably certain terms: it was to last until August 19, 2014, it provided for an increased salary, it adopted most if not all of the other terms of the parties' previous employment contract." (internal citations omitted)). The plaintiff must also specify the contractual provisions breached. *See Coda v. Constellation Energy Power Choice, LLC,* 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must also specifically identify portions of the contract that were allegedly breached." (quoting *Faistl v. Energy Plus Holdings, LLC*, Civ. A. No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012))); *Hall v. Revolt Media & TV, LLC*, Civ. A. No. 17-2217, 2018 WL 3201795, at *2 (D.N.J. June 29, 2018) (same) (quoting *Faistl*, 2012 WL 3535815, at *7).

The "prima facie elements of [*sic*] claim for breach of an implied-in-fact contract . . . are the same as for express contracts." *In re United States Vision Data Breach Litig.*, Civ. A. No. 22-06558, 2024 WL 1975542, at *3 (D.N.J. Apr. 30, 2024). However, an implied contract is "inferred from the conduct of the parties" rather than any explicit written or verbal communication. *Id.* (quoting *Fittipaldi v. Monmouth Univ.*, Civ. A. No. 20-5526, 2021 WL 2210740, at *4 (D.N.J. June 1, 2021)). A court will therefore focus on whether the conduct of the parties demonstrates "mutual assent, consideration, legality of object, and capacity of the parties." *Duffy v. Charles Schwab & Co. Inc.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000).

Here, Plaintiff does not sufficiently allege the circumstances of the contract's formation, including any express or implied offer and acceptance by either party, mutual assent at the time of formation, and consideration exchanged. The Complaint contains a single sentence regarding the contract formation which states "[i]n 2017, the Swiss Arabian Perfumes Industry L.L.C. appointed Marina Group as its exclusive distributor in the United States." (ECF No. 92 ¶ 11.) From this sentence alone, the Court is unable to determine "the contracts [*sic*] 'essential terms' to which the parties manifested an intent to be bound," *Pegaso Dev., Inc.*, 2021 WL 5035970, at *3 (quoting *Grossman*, 2013 WL 1144830, at *3) and whether either party offered consideration via "a detriment incurred by the promisee or a benefit received by the promisor." *Comprehensive Spine Care*, 2019 WL 928421, at *4 (quoting *Seaview Orthopaedics*, 841 A.2d at 921).

Plaintiff's Complaint and its attached documents do not plausibly plead the parties had a common understanding of the terms of an exclusive distributorship agreement. The Complaint states that the distributorship arrangement was "never reduced to a single written agreement" but alleges "Swiss Arabian Perfumes Industry L.L.C. acknowledged Marina Group as its exclusive United States Distributor on multiple occasions." (ECF No. 92 ¶ 12.) However, the Complaint

13

provides only one example where "in a letter dated February 2, 2021, from Swiss Arabian Perfumes Industry L.L.C. to Adam and Eve Oud LLC, located in Warsen, MT, Swiss Arabian Perfumes, Industry L.L.C. told Adam and Eve Oud LLC that it would have to purchase all Swiss Arabian products from its representative in the USA, Marina Group." (*Id.* ¶ 13.) The Complaint attaches the letter as Exhibit A.[1] (*Id.*) However, in Swiss Arabian's letter to Adam and Eve Oud LLC, Swiss Arabian merely states it has "representative office in United Stated [*sic*] of America" and "this office will be responsible for delivery, sales, marketing, and distribution of SAPG products." (*Id.*, Ex. A.) This letter does not refer to Plaintiff as Swiss Arabian's exclusive distributor in the United States and does not indicate that Swiss Arabian had an agreement with Plaintiff not to work with other distributors. Therefore, this letter standing alone cannot satisfy Plaintiff's burden of alleging mutual assent to an implied contract, as it does not show a clear common understanding that Swiss Arabian would not deal with other distributors. Moreover, the letter does not rectify the other pleading deficiencies in Plaintiff's Complaint, as it does not indicate what consideration Plaintiff gave for an exclusive distributor agreement, or any of the other circumstances of the contract formation. Rather, the letter only shows that Plaintiff was responsible for distributing Swiss Arabian products at the time. At the motion to dismiss stage, courts may not infer additional terms to an implied contract beyond what is explicitly stated in a supporting document. *See Powell v. Seton Hall Univ.*, Civ. A. No. 21-13709, 2022 WL 1224959, at *11 (D.N.J. Apr. 26, 2022) (holding recruitment of student-athletes and administration of athletic programs did not create implied contract between student-athletes and university); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, Civ. A. No. 19-2904, 2021 WL

---

[1] The Court may consider the contents of the letter as it is a "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

5937742, at *19 (D.N.J. Dec. 16, 2021) ("In similar situations, courts have consistently held that the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the defendant to secure this information."); *Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 494 (D.N.J. 2023) ("But merely alleging that Anthem authorized the surgery – medically necessary or not – cannot, without more, establish an implied contract between the parties."). Here, the attached letter clearly does not provide enough information for the Court to infer the "the contracts [*sic*] 'essential terms' to which the parties manifested an intent to be bound," *Pegaso Dev., Inc.*, 2021 WL 5035970, at *3 (quoting *Grossman*, 2013 WL 1144830, at *3), meaning it is insufficient to plead the existence of an implied contract.

Accordingly, Count II of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

### 2. Count III (Breach of Implied Covenant of Good Faith and Fair Dealing)

Defendants argue Count III of the Complaint, like Count II, should be dismissed for failure to allege a valid contract. (ECF No. 100-1 at 5–6.) Plaintiff argues a valid contract exists that includes an implied covenant of good faith and fair dealing, which Plaintiff claims, in the case of a distributorship, means the contract may only be terminated upon reasonable notice. (ECF No. 101 at 15–16.) Plaintiff asserts Swiss Arabian's conduct in terminating the distributorship agreement without notice violates the contract's implied covenant of good faith and fair dealing. (*Id.* at 16.) Defendants reply that Plaintiff has not alleged a valid contract, meaning its implied covenant claim must be dismissed. (ECF No. 102 at 9.)

Because the Court has already found that Plaintiff has failed to allege a valid contract, the Court holds Plaintiff has failed to allege one of the elements of an implied covenant of good faith

and fair dealing claim. *See Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017) ("To recover for breach of the implied covenant, a plaintiff must prove that . . . a contract exists between the parties."); *Kenny v. Onward Search*, Civ. A. No. 15-0456, 2015 WL 1799593, at *3 (D.N.J. Apr. 15, 2015) ("As the Court previously noted, Plaintiff has failed to adequately allege the existence of a contract. Without sufficiently alleging the existence of a contract, Plaintiff cannot sufficiently allege the breach of the implied covenant of good faith and fair dealing."); *Abira*, 2024 WL 1928680, at *3 ("And because the Court finds that Plaintiff has not adequately pleaded the existence of a contract or its breach, the claim for breach of the implied covenant in Count Two must be dismissed without prejudice as well.")

Accordingly, Count III of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

### 3. Leave to Amend

Defendants request the Court dismiss Counts II and III of the Complaint with prejudice. (ECF No. 100-1 at 6.)

The Court grants Plaintiff leave to amend its Complaint as, based on the deficiencies identified in this Opinion, it would not be futile for Plaintiff to amend its Complaint, and there is no apparent equitable reason to deny leave to amend. The Federal Rules of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Here, amendment would not be futile as the Plaintiff could provide additional factual content which would cure the deficiencies in the Complaint. *See Munenzon v. Peter Advisors, LLC*, 553 F. Supp. 3d 187, 210 (D.N.J. 2021); *see also United States ex rel. Petratos v. Genentech, Inc.*, Civ. A. No. 11-3691, 2014 WL 7331945, at *2 (D.N.J. Dec. 18, 2014) (stating that "within the Third Circuit, even when a complaint is vulnerable to Rule 12(b)(6) dismissal, the district court should

allow the party a curative amendment, unless the amendment would be futile or inequitable"); *Bankwell Bank v. Bray Ent., Inc.*, Civ. A. No. 20-49, 2021 WL 211583, at *3 (D.N.J. Jan. 21, 2021) (holding that amendment of fraudulent transfer claims would not be futile where plaintiff had already contended it had certain evidence which could support an inference of fraudulent transfer, as the court found this evidence could ground a valid claim if properly pled). Here, the Court notes the Complaint alleges "Swiss Arabian Perfumes Industry L.L.C. acknowledged Marina Group as its exclusive United States Distributor on multiple occasions," but only details one such occasion. (ECF No. 92 ¶¶ 12–13.) Given that Plaintiff may have additional information it could add to an amended complaint, the Court will grant Plaintiff leave to amend its Complaint a third time.

The Court notes, however, that it has now given Plaintiff multiple opportunities to amend its Complaint. Therefore, this will be Plaintiff's final opportunity to state its claims in Counts II and III. *See Andrews v. Keystone Hum. Servs.*, Civ. A. No. 19-220, 2019 WL 3564586, at *1 (M.D. Pa. Aug. 6, 2019) ("We permitted this one, final amendment of the complaint and granted this motion but advised the plaintiff in clear and precise terms that: 'given these three amendments of this complaint, no further leave to amend will be granted, absent compelling circumstances.'"); *McClain v. Pa. Dep't of Corrs.*, Civ. A. No. 19-1951, 2023 WL 8165529, at *1 (M.D. Pa. Mar. 28, 2023) ("Plaintiff is advised that, given these multiple amendments of this complaint, no further leave to amend will be granted."); *cf. McFadden v. Passaic Cnty.*, Civ. A. No. 17-11670, 2019 WL 994691, at *8 (D.N.J. Mar. 1, 2019) ("In this case, McFadden has already received numerous opportunities to revise his pleading; despite multiple amendments, his Fourth Amended Complaint still fails to state a cognizable claim for relief under Section 1983. That fact alone supports prejudicial dismissal of Count III.").

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 100) Counts II and III of Plaintiff's Second Amended Complaint (ECF No. 92) is **GRANTED**. Counts II and III of Plaintiff's Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.


Date: July 8, 2024                             */s/ Brian R. Martinotti*
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**