<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARINA GROUP LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>SHIRLEY MAY INTERNATIONAL US INC., *et al.*,<br><br>     Defendants. | Case No. 2:21-cv-18733 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court is Defendants Shirley May International US, Inc. ("Shirley May US"), Shirley May International FZE ("Shirley May International"), and Swiss Arabian Perfumes Industry, LLC's ("Swiss Arabian") (collectively, "Defendants") Motion to Dismiss (ECF No. 126) Counts II and III of Plaintiff Marina Group, LLC's ("Plaintiff") Third Amended Complaint ("Complaint") (ECF No. 120) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an Opposition on September 23, 2024. (ECF No. 127.) Defendants filed a Reply on September 30, 2024. (ECF No. 128.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **DENIED**.

  **I. BACKGROUND**

    **A. Factual Background**

  For purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter arises from a diverted shipment of perfumes and other related products. (ECF No. 120 ¶ 39.) The relationship between Plaintiff and Defendants began in 2017 when Swiss Arabian appointed Plaintiff as its distributor in the United States. (*Id.* ¶ 11; Ex. A.) The distribution agreement was not reduced to a single writing, but Swiss Arabian acknowledged Plaintiff "as its United States Distributor on multiple occasions." (*Id.* ¶ 12; *see* ¶ 22.) On December 14, 2017, the Authorization Letter designated Plaintiff as "the Authorized Seller" for the North American Market. (*Id.* ¶ 15.) The undated Confirmation Letter designates Plaintiff as the "sole Distributor for USA territory," which Plaintiff states in the Complaint as "reflect[ing] the Parties' verbal agreement that Marina Group was Swiss Arabian Perfumes Industry L.L.C.'s sole and/or exclusive distributor in the United States." (*Id.* ¶ 15; Ex. B.) In a letter dated February 21, 2021, Swiss Arabian referred to Plaintiff as its "representative office in United Stated [*sic*] of America" to a potential product purchaser and stated all Swiss Arabian products must be purchased from said office, *i.e.* from Plaintiff, as part of new strategic policies for the company (*id.* ¶ 21; Ex. C). On June 23, 2021, an email and proposed written agreement by Swiss Arabian to Plaintiff referred to Plaintiff as "[t]he Distributer [who] is the Sole & Exclusive seller on Amazon platform as will [*sic*] the official website of Swiss Arabian." (*Id.* ¶ 21; Ex. D). In the consolidated case,[1] Defendants

---

[1] On November 11, 2021, a Complaint was filed by Shirley May US and Shirley May International against Marina Group LLC and Dikheel Aldikheel. (Dkt. No. 21-cv-19951, ECF No. 1.) On December 15, 2021, 21-cv-19951 was consolidated with 21-cv-18733 for all purposes. (Dkt. No. 21-cv-19951, ECF No. 5.)

also acknowledge Marina Group was a distributor of Swiss Arabian. (*Id.* ¶ 23; Dkt. No. 21-cv-19951, ECF No. 39 ¶ 10.)

Plaintiff sold Swiss Arabian Perfumes Group products via (i) a website named shop.sa-usa.com and (ii) Amazon. (*Id.* ¶ 25.) Plaintiff's purchases of Swiss Arabian products grew from $60,000 in 2017 to approximately $1,000,000 in 2020. (*Id.* ¶ 26.) Plaintiff correspondingly spent over $361,892 on advertising the Swiss Arabian brand between January 1, 2021, and September 30, 2021, and $275,155 on marketing in the three months before the 2021 holiday season. (*Id.* ¶ 28.) "[A]t Swiss Arabian Perfumes Industry L.L.C.'s insistence," Plaintiff also purchased sample vials from them to further market Swiss Arabian products "and further build the brand in the United States." (*Id.* ¶ 29.) During the term of Plaintiff's distributorship agreement with Swiss Arabian, "Swiss Arabian Perfumes Industry L.L.C. and its affiliates were aware of Plaintiff's investment in marketing via reports [Plaintiff] sent from time to time" and "[Plaintiff] was requested to increase all expenditures" in the last year of the distribution relationship. (*Id.* ¶ 30.) Plaintiff was willing to perform these actions and increase its investment "because of its designation as sole and/or exclusive representative and distributor in the United States." (*Id.* ¶ 30.) In general, Plaintiff expended considerable time, effort, and money to promote and build the Swiss Arabian brand in the United States (*Id.* ¶ 32.) During the period of the distributorship, Swiss Arabian products represented close to 100% of Plaintiff's total revenue. (*Id.* ¶ 34.)

Shirley May US was incorporated in New Jersey on January 4, 2021. (*Id.* ¶ 35.) In April 2021, Plaintiff placed an order with Swiss Arabian for a variety of Swiss Arabian perfumes and related products valued at $94,988.89, together with freight charges of $6,700.00, for a total value of $101,688.89. (*Id.* ¶ 39.) On May 7, 2021, Plaintiff's order "was placed aboard the HMM Southampton, Voyage No. 003E, at Jebel Ali, United Arab Emirates, bound for the Port of Los

3

Angeles, California." (*Id.* ¶ 40.) The Order was to be shipped according to a Bill of Lading with Shirley May International designated as the "shipper," Hapag-Lloyd designated as the "carrier," and Plaintiff designated as the consignee. (*Id.* ¶ 41; Ex. E.) At Shirley May International's request, Plaintiff paid $60,000 in advance for the shipment, with the remaining payment of $41,688.89 to be paid prior to the goods being released to Plaintiff. (*Id.* ¶ 43.) Swiss Arabian demanded the $41,688.89 payment via email on July 4, 2021, and attached "documents pertaining to the shipment expected to reach POD at around July 16, 2021." (*Id.* ¶ 34; Ex. D.) Swiss Arabian acknowledged Plaintiff's payment of the $41,688.89 on July 13, 2021. (*Id.* ¶ 45; Ex. H.) The goods were to be delivered at the Port of Los Angeles on July 16, 2021, at which point the shipment would clear customs and be delivered to Plaintiff. (*Id.* ¶ 46.)

The shipment was transferred from the HMM Southampton to Zeng Dong 813 at the port of Nansha, Guangzhou, China on June 6, 2021. (*Id.* ¶ 48.) The Zeng Dong 813 then arrived in Hong Kong, at which point the shipment was placed on the Madrid Bridge bound for the port of New York on October 2, 2021. (*Id.* ¶¶ 48–49; Exs. I, J.) The consignee of the shipment changed from Plaintiff to Shirley May US while the shipment was in transit. (*Id.* ¶ 50; Ex. J.) Plaintiff was not able to obtain "replacement Arabian themed branded products from other suppliers in time for the holiday season." (*Id.* ¶ 52.) Plaintiff usually earns about 40% of its sales during the holiday season, which begins in October. (*Id.* ¶ 51.)

On August 16, 2021, Swiss Arabian "unilaterally and without warning terminated" its distributorship agreement with Plaintiff, effective immediately. (*Id.* ¶ 58.) Swiss Arabian also provided goods to "Intense Oud, located at 5875 N. Lincoln Ave., Suite 132, Chicago, Illinois, 60659." (*Id.* ¶ 57.)

4

**B.     Procedural History**

This action was removed from the Superior Court of New Jersey, Chancery Division, Middlesex County on October 15, 2021. (ECF No. 1.) Plaintiff filed a Motion for Remand on October 19, 2021 (ECF No. 4) and a Motion for a Preliminary Injunction on October 29, 2021 (ECF No. 8). Defendants filed a Cross-Motion for Sanctions on November 1, 2021. (ECF No. 9.) The motions were thereafter withdrawn. (ECF Nos. 26, 31.) On March 21, 2022, Plaintiff filed its First Amended Complaint. (ECF No. 36.) Defendants filed a Motion to Dismiss for failure to state a claim and based on the forum selection clause contained in the subject Bill of Lading. (ECF No. 51.)

On December 13, 2022, this Court granted Defendants' Motion to Dismiss as to Plaintiff's breach of contract, breach of implied covenant, and copyright violation claims, without prejudice and with leave to amend, but denied the motion as to the remaining counts. (ECF No. 70.) Defendants filed a motion for reconsideration on January 23, 2023, asking the Court to reconsider its denial of their Motion to Dismiss Plaintiff's First Amended Complaint, specifically Plaintiff's conversion claim, pursuant to the forum selection clause. (ECF No. 74.) On August 7, 2023, the Court denied Defendants' Motion for Reconsideration. (ECF Nos. 83, 84.) Plaintiff filed its Second Amended Complaint on November 21, 2023, stating claims for: (I) Conversion against Shirley May US; (II) Breach of Contract against Swiss Arabian; (III) Breach of the Implied Covenant of Good Faith and Fair Dealing against Swiss Arabian; (IV) Tortious Interference with Contract against Shirley May International and Swiss Arabian; and (V) Tortious Interference with Prospective Economic Advantage against Shirley May US. (ECF No. 92.) Defendants filed a Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 100.) On July 8, 2024, the Court granted

5

Defendants' Motion to Dismiss as to Plaintiff's breach of contract and breach of implied covenant without prejudice and with leave to amend. (ECF No. 119.)

Plaintiff filed its Third Amended Complaint on July 30, 2024, stating claims for: (I) Conversion against Shirley May US; (II) Breach of Contract against Swiss Arabian; (III) Breach of the Implied Covenant of Good Faith and Fair Dealing against Swiss Arabian; (IV) Tortious Interference with Contract against Shirley May US; and (V) Tortious Interference with Prospective Economic Advantage against Shirley May US. (ECF No. 120.) Defendants filed a Motion to Dismiss Counts II and III of Plaintiff's Third Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 126.) Plaintiff filed an Opposition on September 23, 2024. (ECF No. 127.) Defendants filed a Reply on September 30, 2024. (ECF No. 128.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

6

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

7

alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III. DECISION

#### A. Count II (Breach of Contract)

Defendants argue Plaintiff has failed again to sufficiently plead any of the elements of a contract between Plaintiff and Swiss Arabian. (ECF No. 126 at 4.) Defendants contend that just like in the Second Amended Complaint, Plaintiff's Third Amended Complaint does not allege any express or implied offer and acceptance by either party. (*Id.* at 5.) Defendants continue to claim the essential terms of the contract cannot be discerned since no such elements have been provided (*Id.* at 6.) Likewise, Defendants state there is no basis for an implied contract to be found as the Complaint does not demonstrate any "meeting of the minds" or common understanding of the terms of the contract, make clear when the agreement manifested, what consideration was given, and what obligations Swiss Arabian undertook to Plaintiff. (*Id.*) Defendants also assert Plaintiff fails to plead that it performed its obligations under the contract, as Plaintiff does not allege any

8

terms of the contract which imposed any obligations on it. (*Id.* at 7.) Finally, Defendants claim Plaintiff has not alleged any breach of an exclusive distributorship contract, as Plaintiff alleges only that a shipment was diverted to Defendants themselves and does not allege Swiss Arabian allowed another company to distribute its goods. (*Id.*)

Plaintiff argues it has alleged the elements of a breach of contract claim, as it has shown Swiss Arabian offered Plaintiff an exclusive distributorship agreement, which Plaintiff accepted and relied upon in making various investments in the marketing of the brand. (ECF No. 127 at 1–3, 7–8.) Plaintiff points to the two letters where Swiss Arabian identified it as a "Sole Distributor for USA Territory" and directed another company to go through Plaintiff for an order as it was the U.S. representative office for Swiss Arabian as evidence of the exclusive distributorship. (*Id.* at 7.) Plaintiff asserts "consistent with, and in consideration of, the distributorship, [Plaintiff] performed under the distributorship, by investing heavily in marketing the Swiss Arabian brand." (*Id.*) Plaintiff claims Swiss Arabian breached the contract by selling its products to other companies and terminating the agreement without warning, causing damages to Plaintiff. (*Id.* at 7–8.)

Plaintiff states the contract was in effect from 2017 to August 2021 when Swiss Arabian improperly terminated the distributorship. (*Id.* at 5.) Although there are some normally essential components of a contract missing, such as definiteness, Plaintiff claims an implied exclusive distributorship agreement can be proven via parties' respective actions and the Uniform Commercial Code ("UCC) is able to supply all the missing terms. (*Id* at 5, 8, 11–14) (citing *Liger6, LLC v. Sarto Antonio*, Civ. A. No. 13-4694, 2016 WL 4257762 (D.N.J. Aug. 10, 2016); *Jo-Ann, Inc. v. Alfin Fragrances, Inc.*, 731 F. Supp. 149 (D.N.J. 1989); *Mantell v. Int'l Plastic Harmonica*, 55 A.2d 250 (1947).) Likewise, Plaintiff argues "a distributorship without a stated term can only be terminated on a reasonable notice." (*Id.* at 15.) (citing *Jo-Ann*, 731 F. Supp. at 160; *Sierra Wine*

9

*& Liquor Co. v. Heublein, Inc.*, 626 F.2d 129, 131 (9th Cir. 1980); *Bak-a-Lum Corp. v. Alcoa Bldg. Prod.,* 351 A.2d 349 (1976).

Defendants reply Plaintiff has still failed to allege facts sufficient for a breach of contract cause of action. (ECF No. 128 at 1) ("Plaintiff fails to (1) allege any meeting of the minds sufficient to establish mutual assent to a contract; (2) any express or implied offer or acceptance by either party; (3) consideration exchanged; (4) any contractual breach, and; [*sic*] (5) any material terms of the alleged contract.") Defendants claim Plaintiff is asking the Court to conjure an entire contract predicated upon the term "authorized distributor." (*Id.*) Defendants argue Plaintiff's allegations and exhibits make clear no contract had ever gone into effect between the parties and the inclusion of the unsigned distribution agreement has no impact on either parties' rights or obligations. (*Id.* at 3.) Defendants assert no document or allegation explains the obligations Plaintiff had with regards to an exclusive distributorship nor was there ever a common understanding that Swiss Arabian would not deal with other distributors. (*Id.* at 6.) Defendants finally distinguish Plaintiff's cited cases as being inapplicable decisions due to not being opinions on motions to dismiss as well as claim the UCC cannot "be used to construct an entire contract out of a single alleged term." (*Id.* at 7–11.)

To allege a breach of contract claim, "[a] plaintiff must state facts that allow for the plausible inference that a contract exists and that provisions in that contract were violated." *See Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, Civ. A. No. 23-05142, 2024 WL 1928680, at *2 (D.N.J. Apr. 30, 2024); *Etrailer Corp. v. Unbeatablesale.com, Inc.,* Civ. A. No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (quoting

10

*Riachi v. Prometheus Grp.*, Civ. A. No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016))); *Sequiera v. JP Morgan Chase Bank, N.A.*, Civ. A. No. 16-5278, 2019 WL 1434969, at *3 (D.N.J. Mar. 29, 2019) ("To establish a claim for breach of contract, the plaintiff must demonstrate the existence of a contract by showing offer, acceptance, consideration, and mutual assent.").

To plead the existence of a contract, a plaintiff must allege "(1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms." *Gant v. Ragone*, Civ. A. No. 20-01727, 2020 WL 6797125, at *2 (D.N.J. Nov. 19, 2020); *Sequiera*, 2019 WL 1434969, at *3; *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2013 WL 1223643, at *3 (D.N.J. Mar. 25, 2013) ("No valid contract exists unless a party alleges four elements: 1) a meeting of the minds; 2) an offer and acceptance; 3) consideration; 4) reasonably certain contract terms."). "An enforceable contract may occur where once [*sic*] party communicates an offer and another party demonstrates acceptance." *Gordon v. Dailey*, Civ. A. No. 14-7495, 2018 WL 1509080, at *8 (D.N.J. Mar. 27, 2018). For a contract to be enforceable, "there must be a meeting of the minds for each material term to an agreement." *Read v. Profeta*, 397 F. Supp. 3d 597, 626 (D.N.J. 2019) (quoting *In re Rappaport*, 517 B.R. 518, 529 (Bankr. D.N.J. 2014)); *see also World Express & Connection, Inc. v. Crocus Invs., LLC*, Civ. A. No. 15-8126, 2020 WL 5088633, at *13 (D.N.J. Aug. 28, 2020) (the meeting of the minds requirement 'is met when "there has been a common understanding and mutual assent to all the terms of a contract."' (quoting *In re Rappaport*, 517 B.R. at 530)). As to consideration, "[u]nder New Jersey law, '[c]onsideration may take many forms and may be based upon either a detriment incurred by the promisee or a benefit received by the promisor.'" *Comprehensive Spine Care v. Oxford Health Ins.*, Civ. A. No. 18-10036, 2019 WL 928421, at *4 (D.N.J. Feb. 26, 2019) (quoting *Seaview Orthopaedics ex rel. Fleming v. Nat'l Healthcare Res., Inc.*, 841 A.2d 917, 921 (N.J. App. Div.

2004). For the requirement of "reasonably certain contract terms," the Court must be able to "determine the contracts [*sic*] 'essential terms' to which the parties manifested an intent to be bound." *Pegaso Dev., Inc. v. iOra Acquisition Enters. LLC*, Civ. A. No. 21-3171, 2021 WL 5035970, at *3 (D.N.J. Oct. 18, 2021) (quoting *Grossman v. Parking Auth. of City of Camden*, Civ. A. No. 12-3097, 2013 WL 1144830, at *3 (D.N.J. Mar. 18, 2013)); *see also Grossman*, 2013 WL 1144830, at *3 ("Finally, the 2014 Agreement, while taking oral form, nevertheless included reasonably certain terms: it was to last until August 19, 2014, it provided for an increased salary, it adopted most if not all of the other terms of the parties' previous employment contract." (internal citations omitted)). The plaintiff must also specify the contractual provisions breached. *See Coda v. Constellation Energy Power Choice, LLC,* 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must also specifically identify portions of the contract that were allegedly breached." (quoting *Faistl v. Energy Plus Holdings, LLC*, Civ. A. No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012))); *Hall v. Revolt Media & TV, LLC*, Civ. A. No. 17-2217, 2018 WL 3201795, at *2 (D.N.J. June 29, 2018) (same) (quoting *Faistl*, 2012 WL 3535815, at *7).

The "prima facie elements of [*sic*] claim for breach of an implied-in-fact contract . . . are the same as for express contracts." *In re United States Vision Data Breach Litig.*, Civ. A. No. 22-06558, 2024 WL 1975542, at *3 (D.N.J. Apr. 30, 2024). However, an implied contract is "inferred from the conduct of the parties" rather than any explicit written or verbal communication. *Id.* (quoting *Fittipaldi v. Monmouth Univ.*, Civ. A. No. 20-5526, 2021 WL 2210740, at *4 (D.N.J. June 1, 2021)). A court will therefore focus on whether the conduct of the parties demonstrates "mutual assent, consideration, legality of object, and capacity of the parties." *Duffy v. Charles Schwab & Co. Inc.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000).

12

Here, the Court finds, for purposes of this motion, Plaintiff sufficiently alleges the circumstances of the contract's formation, including any express or implied offer and acceptance by either party, mutual assent at the time of formation, and consideration exchanged. Plaintiff has provided multiple letters which, when combined with the facts asserted, make an exclusive distributorship plausible. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Phillips*, 515 F.3d at 228. In line with such implied contracts, the Third Amended Complaint states the discussions between Plaintiff and Defendants began in 2017 and "covered the extension of exclusive rights to Marina Group, mutual marketing commitments, and the scope of the distributorship and, ultimately culminated in an agreement between the Parties on those issues." (ECF No. 120 ¶ 66.). Further pertinent allegations are that in exchange and in reliance on being the Sole Distributor of Swiss Arabian products, Plaintiff "agreed, among other things, to use its best efforts to promote and build the Swiss Arabian brand." (ECF No. 120 ¶ 68.) Moreover, the Complaint makes explicit that such a contract led to Plaintiff spending millions "to market promote and distribute Swiss Arabian" in the U.S. (ECF No. 120 ¶ 70.)

Since an implied contract is "inferred from the conduct of the parties" rather than any explicit written or verbal communication, the letters from Swiss Arabian describing Plaintiff as the "Sole Distributor for USA territory" and specifying that Plaintiff is "the only authorized distributor/reseller for the Swiss Arabian Product range . . . covering the American market" (*Id.*, Ex. B) as well as Swiss Arabian directing a third party to "purchase all Swiss Arabian products from our representative office in USA," *i.e.*, Plaintiff, "as part of our new strategic policies of our company" (*Id.*, Ex. C) demonstrate a meeting of the minds or mutual assent. *See In re United States Vision Data Breach Litig.*, 2024 WL 1975542, at *3 (quoting *Fittipaldi*, 2021 WL 2210740, at *4); *Duffy*, 123 F. Supp. 2d at 818. While the unsigned agreement does not bind either party to its

13

terms, taken within the context of the Complaint, it further plausibly evinces the conduct of both parties prior to termination were due to an implied contract as Swiss Arabian may have decided to draw up an express contract simply to "create[] more clarity for the [*sic*] both party" instead of establishing an exclusive distributorship for the first time. (*See* ECF No. 120, Ex. D). Likewise, while operating under the claimed contract, Plaintiff alleges Defendants requested it increase all expenditures and were aware of Plaintiff's investment in marketing. (*Id.* ¶ 30.) Altogether, consideration appears to be present and a common understanding as to the exclusive distributorship is plausibly pled. *See Jo-Ann*, 731 F. Supp. at 155 ("[W]hen assessing mutual assent under a contract governed by the UCC, an objective theory . . . is followed—that is, 'a contracting party is bound by the apparent intention he outwardly manifests to the other contracting party. To the extent that his real, secret intention differs therefrom, it is entirely immaterial.'") (quoting *Cohn v. Fisher*, 287 A.2d 222 (N.J. Super. Ct. Law Div. 1972)).

Defendants argued if a contract were plausibly pled, no such breach of the exclusive distributorship occurred since the shipment was diverted to themselves. (ECF No. 126 at 7.) Defendants do not reference any case law explaining why a diverted shipment would not be a breach of this kind of contract. Regardless, Plaintiffs argue *Jo-Ann* observed that a "supplier under an exclusive distributorship cannot supply any other dealer in the covered territory." (ECF No. 127 at 4) (citing *Jo-Ann*, 731 F. Supp. at 158). Indeed, the Complaint states "on dozens of occasions while the sole and/or exclusive distributorship was in effect, Swiss Arabian Perfumes Industry L.L.C. and Shirley May FZE provided Swiss Arabian brand products to Shirley May International US Inc. and other entities in the United States for distribution and sale within the United States." (ECF No. 120 ¶ 55). Defendant argues "there is no indication that [Swiss Arabian] agreed not to work with other distributors." (ECF No. 128 at 12.) However, having found an exclusive

14

distributorship has been plausibly pled and the Complaint asserting shipments occurred to distributors within the exclusive territory in violation of the agreement, a breach of said contract has been sufficiently alleged.

Accordingly, Defendants' Motion to Dismiss Count II of Plaintiff's Third Amended Complaint is **DENIED**.

### B.   Count III (Breach of Implied Covenant of Good Faith and Fair Dealing)

Defendants argue Count III of the Complaint, like Count II, should be dismissed for failure to allege a valid contract. (ECF Nos. 126 at 8.) Plaintiff argues a valid contract exists and it includes an implied covenant of good faith and fair dealing, which Plaintiff claims, in the case of a distributorship, means the contract may only be terminated upon reasonable notice. (ECF No. 127 at 14–15.) Plaintiff asserts Swiss Arabian's conduct in terminating the distributorship agreement without notice violates the contract's implied covenant of good faith and fair dealing. (*Id.* at 16.) Defendants reply Plaintiff has not alleged a valid contract, which means the implied covenant claim must be dismissed. (ECF No. 128 at 12–13.)

Having found Plaintiff has sufficiently pled an exclusive distributorship contract, Defendants' only argument that there is no contract is unavailing. *See Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017) ("To recover for breach of the implied covenant, a plaintiff must prove that . . . a contract exists between the parties."). A claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to prove "(1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Id.* The implied covenant of good faith and good dealing is present in every contract and means "neither party shall do

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contact." *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575 (1997) (quoting *Palisades Properties v. Brunetti*, 207 A.2d 522 (1965) (citing 5 *Williston on Contracts* § 670, at 159–60 (3d ed.1961)). According to N.J. Stat. Ann. §12A:2–309(3), "[t]ermination of a contract by one party . . . requires that reasonable notification be received by the other party." *Jo-Ann*, 731 F. Supp. at 159–60. Comment 8 to UCC §2–309 explains: "Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement." Given this understanding, "reasonableness" relates to the circumstances under which notice is given and the extent of advance warning the termination gives. *Jo-Ann*, 731 F. Supp. at 160 (quoting 2 R. Anderson, UCC § 2:306:42, at 551 (1982)). Such "construction is further supported by the general requirement of good faith. The requirement that reasonable notification be given is not restricted to the manner of giving notice but requires that it be given a reasonable time in advance of the actual termination date." *Id.* Likewise, in the context of distributorship agreements, reasonableness is explicitly observed "to hinge closely upon the amount of time necessary to enable the distributor to look for a new source of supply." *Id.* (quoting 2 Anderson, *supra,* §2–309:18, at 551 & n.12) (citing *Aaron E. Levine & Co. v. Calkraft Paper Co.*, 429 F. Supp. 1039 (E.D. Mich. 1976); *see also Bak-a-Lum*, 351 A.2d 349 (notice to terminate distributorship must be reasonable).

Plaintiff alleges the implied covenant of good faith and dealing was breached by Swiss Arabian terminating the distributorship without warning and providing Shirley May International US Inc. and other U.S. entities with product while the distributorship was in effect. (ECF No. 120 ¶ 81.) Plaintiff also states "[d]ue to production and shipping lead times, [Plaintiff] could not obtain

16

replacement Arabian themed branded products from other suppliers in time for the holiday season" as well as claims Defendants "timed the diversion of the Shipment to deprive [Plaintiff] of the latest Swiss Arabian products during the holiday season so as to inflict the maximum amount of harm to [Plaintiff]." (*Id.* ¶¶ 52–53.) Plaintiff asserts "[a]s a direct and proximate result of Swiss Arabian . . . terminating the distributorship without warning, . . . [Plaintiff] was left with unsellable samples of Swiss Arabian products . . . [and] with difficult to sell B and C grade Swiss Arabian products." (*Id.* ¶ 75.) Without any argument against this claim beyond the assertion no contract exists, and having already determined a distributorship agreement is sufficiently pled, which carries an implied covenant of good faith and fair dealing, the Court finds Plaintiff has adequately alleged a breach of good faith and fair dealing.

Accordingly, Defendants' Motion to Dismiss Count III of Plaintiff's Third Amended Complaint is **DENIED.**

## IV. Conclusion

For the reasons set forth above, and for good cause having been shown, Defendants' Motion to Dismiss (ECF No. 126) Counts II and III of Plaintiff's Third Amended Complaint (ECF No. 120) is **DENIED**. An appropriate order follows.

Date: April 30, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**